## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

17-80013-CR-Middlebrooks/Brannon

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1035
18 U.S.C. § 1956
18 U.S.C. § 1957
18 U.S.C. § 1594(c)
21 U.S.C. § 856(a)
18 U.S.C. § 981(a)(1)(c)
28 U.S.C. § 2461(c)

**UNITED STATES OF AMERICA**

vs.

**KENNETH CHATMAN, a/k/a "Kenny,"**
**JOAQUIN MENDEZ,**
**DONALD WILLEMS,**
**FRANSESIA DAVIS, a/k/a "Francine,"**
**a/k/a "Francesa,"**
**MICHAEL BONDS,**
**STEFAN GATT,**
**and**
**LAURA CHATMAN,**



FILED BY ___KJZ___

Deputy Clerk

**Jan 24, 2017**

STEVEN M. LARIMORE
CLERK U.S. DISTRICT CT.
S.D. OF FLA. West Palm Beach

**Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Treatment Centers

1.      Journey to Recovery LLC ("Journey") was located at 7451 S. Military Trail, Lake

Worth, Florida, in Palm Beach County. Journey purported to operate as a licensed "substance

abuse service provider" or "treatment center," that is, it purportedly offered clinical treatment

services for persons suffering from alcohol and drug addiction. Defendant LAURA CHATMAN was listed as the sole owner of Journey on the corporate records filed with the State of Florida and the licensing documents filed with the Florida Department of Children and Families ("DCF").

2.      Reflections Treatment Center, LLC ("Reflections") was located at 5100 Coconut Creek Parkway, Margate, Florida, in Broward County. Reflections purported to operate as a licensed "substance abuse service provider" or "treatment center," that is, it purportedly offered clinical treatment services for persons suffering from alcohol and drug addiction. Defendant LAURA CHATMAN was listed as the sole owner of Reflections on the corporate records filed with the State of Florida and the licensing documents filed with DCF.

## The Sober Homes

3.      Stay'n Alive, Inc. ("Stay'n Alive") was a multi-bed residence in Palm Beach County, Florida, located at 10102 Patience Lane, Royal Palm Beach, purporting to operate as a "recovery residence," commonly referred to as a "sober home." According to corporate records filed with the State of Florida, defendant KENNETH CHATMAN, a/k/a "Kenny," was the President of Stay'n Alive and defendant LAURA CHATMAN was the Vice-President.

4.      Total Recovery Sober Living LLC ("Total Recovery") was a multi-bed residence in Palm Beach County, Florida, located at 3401 Westview Avenue, West Palm Beach, Florida, purporting to operate as a sober home. According to corporate records filed with the State of Florida, defendant FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," was the registered agent and sole officer of Total Recovery. Defendant FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa" referred over 60 Total Recovery patients to Reflections, and, in exchange, defendant FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," directly or indirectly received more than $49,000 in payments from Reflections.

2

5.      Redemption Sober House, Inc. ("Redemption") was a multi-bed residence in Palm Beach County, Florida, located at 243 N.E. 13th Street, Delray Beach, Florida, purporting to operate as a sober home. According to corporate records filed with the State of Florida, defendant MICHAEL BONDS was the president of Redemption. Defendant MICHAEL BONDS referred over 100 Redemption patients to Reflections and, in exchange, directly or indirectly received more than $100,000 in payments from Reflections.

6.      Turning Point Sober Home Corp. ("Turning Point") was an entity that operated numerous multi-bed residences in Broward County, Florida, including locations at 219 S.W. 8th Street, Deerfield Beach, Florida and 5611 Pinetree Road, Parkland, Florida, that purported to operate as sober homes. Turning Point was owned and operated by a person known to the Grand Jury. Turning Point referred over 60 patients to Reflections and, in exchange, Turning Point's owner directly and indirectly received more than $240,000 in payments from Reflections.

7.      Defendant KENNETH CHATMAN controlled additional multi-bed residences purporting to operate as sober homes in Palm Beach and Broward Counties, including ones located at 962 43rd Street, West Palm Beach, Florida, 10152 Boynton Place Circle, Boynton Beach, Florida; 6090 Wauconda Way East, Boynton Beach, Florida; 5649 Strawberry Lake Circle, Lake Worth, Florida; 1130 48th Street, Mangonia Park, Florida; 629 Clear Lake Avenue, West Palm Beach, Florida; 1501 North Federal Highway, Lake Worth, Florida; 2580 NW 5th Street, Pompano Beach, Florida; and 1850 Southwest 51st Terrace, Plantation, Florida. Defendant FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," served as the "house manager" of the sober homes located at 1501 North Federal Highway, Lake Worth, Florida, 1130 48th Street, Mangonia Park, Florida, and 2580 NW 5th Street, Pompano Beach, Florida, and her name appeared on the lease for the sober home located at 1130 48th Street, Mangonia Park, Florida.

3

## The Laboratories

8.     Lab #1 was a laboratory located in the Middle District of Florida that performed urine, saliva, and other testing for Reflections and Journey.

9.     Lab #2 was a laboratory located in the Southern District of Florida that performed urine and other testing for Reflections and Journey.

10.    Lab #3 was a laboratory located in the Western District of Texas that performed urine and other testing for Reflections.

11.    Lab #4 was a laboratory located in the Eastern District of Pennsylvania that performed urine and other testing for Reflections.

12.    Lab #5 was a laboratory located in the Northern District of Texas that performed urine and other testing for Reflections.

## The Defendants

13.    Defendant KENNETH CHATMAN, a/k/a "Kenny," was the true owner of Reflections and Journey, managing all aspects of the treatment centers, including hiring and firing personnel, admitting and discharging patients, and making financial decisions.   KENNETH CHATMAN, a/k/a "Kenny," had a felony conviction that made him ineligible to own, operate or serve as personnel at a licensed substance abuse service provider.  KENNETH CHATMAN, a/k/a "Kenny," was also the true owner of Stay'n Alive, Total Recovery, and other unnamed sober homes, managing all aspects of the sober homes, including hiring and firing personnel, selecting and evicting residents, and making financial decisions.

14.    Defendant JOAQUIN MENDEZ, a licensed medical doctor in the State of Florida, was the medical director of Reflections from January 2014 to July 2014, and from September 2014 to September 2015.  As medical director, MENDEZ was purportedly responsible for evaluating

4

patients, developing appropriate plans of treatment, and prescribing medically necessary treatment and testing.

15.     Defendant DONALD WILLEMS, a licensed osteopathic doctor in the State of Florida, was medical director of Reflections from October 2015 to May 2016.  As medical director, ~~MENDEZ~~ WILLEMS was purportedly responsible for evaluating patients, developing appropriate plans of treatment, and prescribing medically necessary treatment and testing.

16.     Defendant FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," was an employee at Reflections and Journey and the nominee owner of the sober home named Total Recovery.  FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," managed Total Recovery and other unnamed sober homes for KENNETH CHATMAN, a/k/a "Kenny," the true owner.

17.     Defendant MICHAEL BONDS owned and operated the sober home named Redemption and referred residents of his sober home to Reflections in exchange for the receipt of payments from defendant KENNETH CHATMAN, a/k/a "Kenny."

18.     Defendant STEFAN GATT was an employee of Lab #1 and performed services for Lab #5 in exchange for commissions paid to a third party.  Amongst other duties, defendant STEFAN GATT collected urine and saliva samples from Reflections and Journey to deliver to Lab #1 and Lab #5.  Defendant STEFAN GATT invested in Journey and was a part-owner, although his ownership interest was not disclosed on corporate documents filed with the State of Florida or on any licensing documents filed with DCF.

19.     Defendant LAURA CHATMAN was the wife of KENNETH CHATMAN, a/k/a "Kenny," and a nominee owner of Journey, Reflections, and Stay'n Alive.  She was a signatory on the bank accounts for these companies and signed many of the checks issued on these accounts.

5

LAURA CHATMAN signed and filed applications for licensure and was present at the Journey and Reflections offices during regulatory inspections and audits.

## Federal Guidelines for Substance Abuse Treatment

20.     The U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration, Center for Substance Abuse Treatment ("SAMHSA") was tasked with establishing and implementing a comprehensive program to improve the provision of treatment and related services to individuals with respect to substance abuse and with protecting the legal rights of individuals who are substance abusers. 42 U.S.C. § 290aa.

21.     "Substance abuse" is defined as "the abuse of alcohol or other drugs." 42 U.S.C. § 290cc-34(4). "Treatment" means "the management and care of a patient suffering from alcohol or drug abuse, a condition which is identified as having been caused by that abuse, or both, in order to reduce or eliminate the adverse effects upon the patient." 42 C.F.R. § 2.11.

22.     In addition to substance abuse treatment programs, SAMHSA promulgated guidelines for sober homes. Sober homes generally did not provide medical care or clinical services to their residents. When properly managed, sober homes operated as alcohol and drug free living environments for individuals attempting to abstain from alcohol and drugs, including providing a peer support network of individuals in recovery.

## Substance Abuse Treatment in Florida

23.     Substance abuse services in Florida were governed by the "Hal S. Marchman Alcohol and Other Drug Services Act" ("the Marchman Act"), Fl. Stat. § 397.301. Amongst other things, the Marchman Act made it unlawful for any person or agency to act as a substance abuse service provider unless it was properly licensed. Fl. Stat. § 397.401(1); Fl. Admin. Code § 65D-

300.003(1)(a).  Under the Marchman Act, private substance abuse service providers' policies regarding payment for services had to comply with federal and state law.  Fl. Stat. § 397.431

24.     The Florida Department of Children and Families was tasked with regulating and licensing substance abuse service providers.  Fl. Stat. § 397.321.

25.     To insure the legitimacy of substance abuse service providers and to protect the health and welfare of patients, all substance abuse service provider personnel, including all owners, directors, and chief financial officers, had to pass a "level 2 background screening," including "fingerprinting for statewide criminal history records checks through the Department of Law Enforcement, and national criminal history records checks through the Federal Bureau of Investigation."   Fl. Stat. §§ 397.451(1)(a)(1), 435.04(1)(a).   Persons with qualifying felony convictions, including defendant KENNETH CHATMAN, a/k/a "Kenny," were ineligible to own, operate, or serve as personnel at licensed substance abuse service providers, including the Treatment Centers.

26.     The Marchman Act also provided guidelines for sober homes/recovery residences, which were defined as "a residential dwelling unit, or other form of group housing that is offered or advertised . . . as a residence that provides a peer-supported, alcohol-free, and drug-free living environment."  Fl. Stat. § 397.311(36).

### Payment for Substance Abuse Treatment

27.     Insurance coverage for substance abuse treatment and testing was available through a number of avenues, including federal health care benefits programs like the Federal Employees Health Benefits Program ("FEHBP")), health plans sponsored by private employers (including the National Railroad Passenger Corporation ("Amtrak") employee health care benefit plans), and health plans offered directly by private insurance companies.  Health plans sponsored by private

7

employers are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, while those sponsored by governmental employers and certain others are exempted from ERISA's jurisdiction.

28.     Both ERISA and non-ERISA health benefit plans, including Affordable Care Act plans, were offered or administered by private insurance companies, including Blue Cross/Blue Shield ("BCBS"), Aetna, Cigna Behavioral Health, Cigna Health & Life Insurance Company, United Behavioral Health, and United Health Group.

29.     Journey, Reflections, Lab #1, Lab #2, Lab #3, Lab #4, and Lab #5 submitted claims for reimbursement to more than forty health benefit plans, including the FEHBP plans, Amtrak's established plans, and private ERISA and non-ERISA health benefit plans (jointly referred to as "the Insurance Plans").

30.     The Insurance Plans were "health care benefit programs," as defined in Title 18, United States Code, Section 24(b), that is "public or private plans or contracts, affecting commerce, under which any medical benefit, item or service is provided to any individual."

31.     Regardless of the type of Insurance Plan held by a patient, the amount of coverage and terms and conditions of billing and payment were governed by the terms of the patient's insurance documents, and the insurance company administering the plan had the authority, responsibility, and discretion to make coverage determinations and to process and make payments on claims.

32.     The "Florida Patient Brokering Act," made it a felony offense for any person, health care provider, or health care facility, including any state licensed substance abuse service provider, to: "(a) Offer or pay any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, to induce the

8

referral of patients or patronage to or from a health care provider or health care facility; (b) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for referring patients or patronage to or from a health care provider or health care facility; (c) Solicit or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, or engage in any split-fee arrangement, in any form whatsoever, in return for the acceptance or acknowledgement of treatment from a health care provider or health care facility; or (d) Aid, abet, advise, or otherwise participate in the conduct prohibited under paragraph (a), paragraph (b), or paragraph (c)." Fla. Stat. § 817.505.

33.     Florida law also provided that it was "a material omission and insurance fraud . . . for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge." Fla. Stat. § 817.234(7)(a).

34.     Under the terms of the insurance policies and consistent with state and federal law, the Insurance Plans were only responsible for claims for services that: (a) were "medically necessary" and actually rendered, (b) were provided by a properly licensed service provider, and (c) complied with the terms of the health care plans, including the obligation to pay co-insurance and deductibles.

### Payment for Residing at Sober Homes

35.     Unlike treatment facilities, sober homes generally did not provide medical care or clinical services that could be reimbursed by health insurance. While there were federal and state guidelines, sober homes were not licensed or funded by state or local governments. Since sober

homes were merely places to live, legitimate sober homes generated income to cover expenses through the collection of weekly or monthly rent paid by their residents, just as with any other landlord-tenant relationship.

## Bodily Fluid Testing

36. Bodily fluid testing could be used to detect recent drug or alcohol use by a client by conducting various tests on a client's urine, blood, and saliva. Urine Analysis or urinalysis ("UA") testing ranged in complexity from screening tests – also known as point of care ("POC") testing – which provided instant results, to confirmatory testing, which was sent to a laboratory, for more complex analysis. Laboratories could also conduct complex analysis on blood and saliva samples.

37. Like other medical tests, bodily fluid testing could be billed and reimbursed pursuant to the terms of the insurance policy. The Insurance Plans were only responsible for claims for testing that was "medically necessary," actually performed, prescribed, and conducted by a properly licensed service provider, and conducted and billed in compliance with the terms of the health care plan, including the obligation to pay co-insurance.

38. The Insurance Plans provided guidance to service providers, including physicians, substance abuse treatment centers, and laboratories, for the types and frequency of testing that would be reimbursable. This guidance was based upon policy statements from the American Society of Addiction Medicine ("ASAM"), publications by expert researchers in the area of substance abuse treatment, and policies of federal and state governmental agencies.

## Count 1
### (Conspiracy to Commit Health Care Fraud – 18 U.S.C. § 1349)

39. Paragraphs 1-38 of the "General Allegations" section of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

10

40. From at least as early as August 2012, through in or around December 2016, the exact dates being unknown to the Grand Jury, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**KENNETH CHATMAN, a/k/a "Kenny,"**
**JOAQUIN MENDEZ,**
**DONALD WILLEMS,**
**FRANSESIA DAVIS, a/k/a "Francine,"**
**a/k/a "Francesa,"**
**MICHAEL BONDS,**
**STEFAN GATT,**
**and**
**LAURA CHATMAN,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, in connection with the delivery of and payment for health care benefits, items, and services, to execute and attempt to execute, a scheme and artifice to: (a) defraud health care benefit programs, as defined by Title 18, United States Code, Section 24(b); and (b) obtain, by means of materially false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of, health care benefit programs, as defined by Title 18, United States Code, Section 24(b).

**OBJECT OF THE CONSPIRACY**

41. It was the object of the conspiracy for the defendants to unlawfully enrich themselves and others, by defrauding health care benefit programs and obtaining the money of health care benefit programs to which the defendants were not entitled.

**MANNER AND MEANS OF THE CONSPIRACY**

42. The manner and means by which the defendants sought to accomplish the object of the conspiracy included, among other things, the following:

11

a.      Defendants KENNETH CHATMAN, a/k/a "Kenny," FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," and MICHAEL BONDS, and co-conspirators established sober homes, including Stay'n Alive, Redemption, Total Recovery, Turning Point, and sober homes at the addresses listed in paragraph 7, which were purportedly in the business of providing safe and drug-free residences for individuals suffering from drug and alcohol addiction.

b.      Defendants KENNETH CHATMAN, a/k/a "Kenny," FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," and LAURA CHATMAN and other co-conspirators created and signed documents to conceal the fact that KENNETH CHATMAN, a/k/a "Kenny," had an ownership and managerial interest in the sober homes.

c.      To obtain residents for the sober homes, defendants KENNETH CHATMAN, a/k/a "Kenny," FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," and MICHAEL BONDS, and co-conspirators provided kickbacks and bribes, in the form of free or reduced rent and other benefits to individuals with insurance who agreed to reside at the sober homes, attend drug treatment, and submit to regular and random drug testing (typically three or more times per week), so that members of the conspiracy could bill the testing and treatment to the residents' Insurance Plans.

d.      Although the sober homes were purportedly drug-free residences, defendants KENNETH CHATMAN, a/k/a "Kenny," FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," and MICHAEL BONDS, and co-conspirators permitted the residents to continue using drugs as long as they attended treatment and submitted to drug testing. In some instances, defendant KENNETH CHATMAN, a/k/a "Kenny," and co-conspirators provided residents with drugs.

12

e. Defendants KENNETH CHATMAN, a/k/a "Kenny," STEFAN GATT, and LAURA CHATMAN, and co-conspirators established substance abuse treatment centers, including Reflections and Journey, which were purportedly in the business of providing effective clinical treatment services for persons suffering from alcohol and drug addiction.

f. Defendants KENNETH CHATMAN, a/k/a "Kenny," STEFAN GATT, and LAURA CHATMAN and other co-conspirators created and signed documents to conceal the fact that KENNETH CHATMAN, a/k/a "Kenny," had an ownership and managerial interest in Reflections and Journey because KENNETH CHATMAN, a/k/a "Kenny" could not lawfully own or operate a substance abuse treatment center licensed by the State of Florida.

g. Defendant LAURA CHATMAN signed and submitted documents to DCF and appeared at Reflections and Journey for inspections by DCF and other accrediting agencies in order to conceal defendant KENNETH CHATMAN's ownership and management of Reflections and Journey.

h. Defendants KENNETH CHATMAN, a/k/a "Kenny," FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," and MICHAEL BONDS, and co-conspirators who owned, operated and managed sober homes referred the residents with insurance to become patients at treatment centers owned and operated by defendant KENNETH CHATMAN, a/k/a "Kenny," including Journey and Reflections, in return for kickbacks and bribes from defendant KENNETH CHATMAN, a/k/a "Kenny," which kickbacks and bribes were often disguised as marketing fees, consulting fees, commissions, and case management fees.

i. Defendant KENNETH CHATMAN, a/k/a "Kenny," required the sober home residents to travel to Reflections and Journey approximately three times per week to attend purported substance abuse treatment sessions and to submit to drug testing, which defendant

13

KENNETH CHATMAN, a/k/a "Kenny," and his co-conspirators could bill to the Insurance Plans. To this end, defendant KENNETH CHATMAN, a/k/a "Kenny," sent vans, often operated by defendant FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," to the sober homes to transport the residents to Reflections and Journey.

           j.      In many instances, sober home residents were not present when the van arrived and therefore did not attend the purported treatment sessions at Reflections and Journey and did not provide bodily fluid samples for drug testing. On such occasions, defendant KENNETH CHATMAN, a/k/a "Kenny," and co-conspirators caused employees of Reflections and Journey, including defendant FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," and other persons known and unknown to the Grand Jury, to forge patients' signatures on sign-in sheets to make it appear as though absent patients had attended treatment and submitted bodily fluid samples.

           k.      Defendants KENNETH CHATMAN, a/k/a "Kenny," and STEFAN GATT would obtain urine and saliva samples from employees of Reflections and Journey, including defendant FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," and from other patients, and submit these samples for testing as if they had been obtained from the absent patients.

           l.      Defendant KENNETH CHATMAN, a/k/a "Kenny," and co-conspirators caused confirmatory testing to be performed and testing and substance abuse treatment to be billed for patients knowing that the patients had been discharged or had left the treatment centers and were no longer receiving treatment or submitting bodily fluid samples for testing at the treatment centers.

           m.      Defendant KENNETH CHATMAN, a/k/a "Kenny," hired doctors, including defendants JOAQUIN MENDEZ and DONALD WILLEMS, to serve as medical

directors of his treatment centers. Defendants KENNETH CHATMAN, a/k/a "Kenny," and LAURA CHATMAN also paid the doctors, including defendants JOAQUIN MENDEZ and DONALD WILLEMS, a monthly salary and in return the doctors ordered drug testing for the treatment center patients, regardless of whether such testing was medically necessary or conducted and billed in compliance with the terms of the Insurance Plans.

n.    Defendant KENNETH CHATMAN, a/k/a "Kenny," hired defendant DONALD WILLEMS to serve as medical director and to prescribe opioids for the detoxification and treatment of persons suffering from opioid addiction knowing that defendant DONALD WILLEMS did not have the proper certifications from SAMHSA or the Drug Enforcement Administration ("DEA") to prescribe those medications.

o.    Despite his lack of certifications from SAMHSA and DEA, defendant DONALD WILLEMS prescribed controlled substances, including opioids, to patients at Reflections using DEA numbers assigned to other physicians and prescriptions that were pre-signed by another physician.

p.    Defendants JOAQUIN MENDEZ and DONALD WILLEMS examined the treatment center patients and billed the patients' insurance plans for those examinations. Defendants JOAQUIN MENDEZ and DONALD WILLEMS submitted and caused the submission of bills to the patients' insurance plans using procedure codes that reflected more complex and lengthier examinations than defendants JOAQUIN MENDEZ and DONALD WILLEMS performed.

q.    Defendants KENNETH CHATMAN, a/k/a "Kenny," JOAQUIN MENDEZ, DONALD WILLEMS, STEFAN GATT, and other co-conspirators at Journey and Reflections ordered and caused the ordering of expensive urine and saliva drug screens and allergy

15

testing which were not medically necessary or reimbursable, in that (i) the confirmatory tests were duplicative because patients' urine samples were split and sent to multiple laboratories for the same tests; (ii) the test results were not timely reviewed or used by a doctor or treatment professional in developing or modifying the patients' treatment plans; (iii) tests were not ordered until after the tests were performed; and (iv) the tests were not determined to be medically necessary on an individualized basis by a doctor prior to being performed.

      r.      Defendants KENNETH CHATMAN, a/k/a "Kenny," and LAURA CHATMAN, and other co-conspirators directly and indirectly solicited and received kickbacks and bribes from defendant STEFAN GATT and other co-conspirator clinical laboratory agents and employees for sending the lab tests related to patients of Journey and Reflections to the clinical laboratories that, in turn, would bill the patients' Insurance Plans. These kickbacks and bribes were sometimes disguised as gifts, investments, and dividends.

      s.      Defendants JOAQUIN MENDEZ and DONALD WILLEMS electronically signed hundreds of lab test results for Reflections' patients falsely certifying that they had reviewed the results and the statements of medical necessity for the lab testing despite the fact that the results were weeks or months old and many of the patients had already left Reflections.

      t.      Members of the conspiracy, including KENNETH CHATMAN, a/k/a "Kenny," and STEFAN GATT, elected not to collect mandatory co-pays, deductibles, and other co-insurance from patients that could cause patients to be unable or unwilling to submit to testing and treatment so that the members of the conspiracy, including KENNETH CHATMAN, a/k/a "Kenny," JOAQUIN MENDEZ, DONALD WILLEMS, and STEFAN GATT, could, instead, collect the much larger reimbursements from the Insurance Plans. The members of the conspiracy, including KENNETH CHATMAN, a/k/a "Kenny," JOAQUIN MENDEZ, DONALD WILLEMS,

16

and STEFAN GATT, did not inform the Insurance Plans that they were not collecting the co-insurance payments as required by the terms of the Insurance Plans.

u.     Defendant KENNETH CHATMAN, a/k/a "Kenny," and co-conspirators recruited and coerced some female residents into prostitution and other sexual conduct, by, among other things, providing controlled substances to these patients and residents in exchange for performing sexual acts. These residents were not required to attend treatment or provide bodily fluid samples for testing, but defendant KENNETH CHATMAN submitted and caused the submission of claims to the residents' Insurance Plans for substance abuse treatment and testing that they did not receive.

v.     Defendant KENNETH CHATMAN, a/k/a "Kenny," and co-conspirators directly and indirectly maintained control over residents by threatening violence and confiscating their belongings, car keys, telephones, medications, and food stamps, in order to maintain the ability to continue billing their Insurance Plans.

w.     Defendants KENNETH CHATMAN, a/k/a "Kenny," JOAQUIN MENDEZ, DONALD WILLEMS, STEFAN GATT, and LAURA CHATMAN, and persons known and unknown to the Grand Jury, prepared and caused the preparation and submission to the Insurance Plans of fraudulent insurance claim forms, that is, (i) the claims falsely stated that the testing and treatment had been medically necessary and actually rendered when, in truth and in fact, some of the claimed testing and treatment had not been necessary or performed; (ii) the claims failed to disclose that the patients had not been asked to pay their co-payments and deductibles; and (iii) the claims failed to disclose that Journey and Reflections had obtained their licenses through false statements and omissions.

All in violation of Title 18, United States Code, Section 1349.

17

## Count 2
### (False Statement Related to Health Care Matter – 18 U.S.C. § 1035(a)(1))

43.     On or about January 18, 2014, in Broward County, in the Southern District of Florida, and elsewhere, the defendants

**KENNETH CHATMAN, a/k/a "Kenny,"**
**and**
**LAURA CHATMAN,**

in a matter involving health care benefit programs, knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact in connection with the delivery of health care services, that is, in an application for licensure and supporting documentation, the defendants listed Laura Chatman as the sole owner of Reflections, and failed to disclose that Kenneth Chatman, a convicted felon, was an owner and director of Reflections, in connection with obtaining a license from the Florida Department of Children and Families authorizing Reflections to provide substance abuse services; in violation of Title 18, United States Code, Sections 1035(a)(1) and 2.

## Count 3
### (False Statement Related to Health Care Matter – 18 U.S.C. § 1035(a)(1))

44.     On or about September 23, 2016, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**KENNETH CHATMAN, a/k/a "Kenny,"**
**and**
**LAURA CHATMAN,**

in a matter involving health care benefit programs, knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact in connection with the delivery of health care services, that is, in an application for licensure and supporting documentation, the defendants listed Laura Chatman as the sole owner of Journey, and failed to disclose that Kenneth

18

Chatman, a convicted felon, was an owner and director of Journey, in connection with obtaining a license from the Florida Department of Children and Families authorizing Journey to provide substance abuse services; in violation of Title 18, United States Code, Sections 1035(a)(1) and 2.

## Count 4
## (Money Laundering Conspiracy – 18 U.S.C. § 1956(h))

45.     Paragraphs 1 through 38 of the "General Allegations Section" and paragraph 42 of the Manner and Means Section of Count 1 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

46.     From at least as early as August 2012, through in or around December 2016, the exact dates being unknown to the Grand Jury, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**KENNETH CHATMAN, a/k/a "Kenny,"
JOAQUIN MENDEZ,
DONALD WILLEMS,
FRANSESIA DAVIS, a/k/a "Francine,"
a/k/a "Francesa,"
MICHAEL BONDS,
and
LAURA CHATMAN,**

did knowingly and willfully combine, conspire, confederate, and agree with persons known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

(a)     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

19

(b)     to knowingly engage and attempt to engage in monetary transactions, as defined in 18 U.S.C. Section 1957(f)(1), in the United States, each such transaction involving criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

47.     It is further alleged that the specified unlawful activity was health care fraud and conspiracy to commit health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349.

All in violation of Title 18, United States Code, Section 1956(h).

## Counts 5 through 11
### (Money Laundering – 18 U.S.C. § 1956(a)(1)(A)(i))

48.     Paragraphs 1 through 38 of the "General Allegations Section" and paragraph 42 of the Manner and Means Section of Count 1 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

49.     On or about the date specified as to each Count below, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants specified as to each Count below, did conduct the financial transaction described in each Count below, which involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of specified unlawful activity:

| Count | Date | Defendant(s) | Description of Transaction |
|-------|------|--------------|----------------------------|
| 5 | 7/23/2015 | K. CHATMAN  J. MENDEZ  L. CHATMAN | Check No. 1415 for $7,500 drawn on REFLECTIONS bank account ending in 3040 at Wells Fargo Bank made payable to Care MD and signed by L. CHATMAN was deposited into a PNC Bank account. |

20

| Count | Date | Defendant(s) | Description of Transaction |
|-------|------|--------------|----------------------------|
| 6 | 9/2/2015 | K. CHATMAN<br>J. MENDEZ<br>L. CHATMAN | Check No. 1512 for $5,000 drawn on REFLECTIONS bank account ending in 3040 at Wells Fargo Bank made payable to Care MD LLC and signed by L. CHATMAN was deposited into a PNC bank account. |
| 7 | 11/18/2015 | K. CHATMAN<br>D.WILLEMS<br>L. CHATMAN | Check No. 1650 for $3,600 drawn on REFLECTIONS bank account ending in 3040 at Wells Fargo Bank made payable to Deerfield Medical and signed by L. CHATMAN was deposited into a PNC bank account. |
| 8 | 2/9/2016 | K. CHATMAN<br>M. BONDS<br>L. CHATMAN | Check No. 1856 for $5,100 drawn on REFLECTIONS bank account ending in 3040 at Wells Fargo Bank made payable to Redemption Sober House Inc. and signed by L. CHATMAN was deposited into a PNC bank account. |
| 9 | 4/15/2016 | K. CHATMAN<br>F. DAVIS<br>L. CHATMAN | Check No. 2085 for $750 drawn on REFLECTIONS bank account ending in 3040 at Wells Fargo Bank made payable to "Francesa Davis" and signed by L. CHATMAN was cashed. |
| 10 | 6/21/2016 | K. CHATMAN<br>M. BONDS<br>L. CHATMAN | Check No. 2282 for $4,600 drawn on REFLECTIONS bank account ending in 3040 at Wells Fargo Bank made payable to Redemption Sober Living and signed by K. CHATMAN was deposited into a PNC bank. |
| 11 | 7/8/2016 | K. CHATMAN<br>F. DAVIS<br>L. CHATMAN | Check No. 2340 for $800 drawn on REFLECTIONS bank account ending in 3040 at Wells Fargo Bank made payable to "Francesa Davis" and signed by K. CHATMAN was cashed. |

50.     It is further alleged that the specified unlawful activity was health care fraud and conspiracy to commit health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## Counts 12 through 15
### (Money Laundering – 18 U.S.C. § 1957)

51.     Paragraphs 1 through 38 of the "General Allegations Section" and paragraph 42 of

the Manner and Means Section of Count 1 of this Indictment are realleged and incorporated by

reference as if fully set forth herein.

52.     On or about the dates set forth below, in Palm Beach and Broward Counties, in the

Southern District of Florida, and elsewhere, the defendant(s) specified as to each count below, did

knowingly engage and attempt to engage in the following monetary transactions by, through, or to

a financial institution, affecting interstate or foreign commerce, in criminally derived property of

a value greater than $10,000, that is the deposit, withdrawal, transfer, and exchange of funds and

monetary instruments, such property having been derived from a specified unlawful activity:

| Count | Date | Defendant(s) | Description of Transaction |
|-------|------|--------------|----------------------------|
| 12 | 12/01/2014 | K. CHATMAN | Check No. 3641 for $93,227.09 from Lab #3, made payable to Kenneth A Chatman and endorsed by K. CHATMAN, was deposited to K. CHATMAN's bank account ending in 0758 at Wells Fargo Bank. |
| 13 | 02/04/2015 | K. CHATMAN L. CHATMAN | Check No. 1125 for $167,927, made payable to SC, drawn on REFLECTIONS bank account ending in 3040 at Wells Fargo Bank, and signed by L. CHATMAN, was deposited in a JP Morgan Chase Bank Account. |
| 14 | 05/04/2015 | K. CHATMAN | Check No. 4470 for $67,742.77 from Lab #3, made payable to Kenneth A Chatman and endorsed by K. CHATMAN, was deposited to K. CHATMAN's bank account ending in 0758 at Wells Fargo Bank. |

| Count | Date | Defendant(s) | Description of Transaction |
|-------|------|--------------|----------------------------|
| 15 | 09/29/2015 | K. CHATMAN<br>L. CHATMAN | Withdrawal/Wire Transfer No. 3456 for $435,000.00 made payable to RLGPA, drawn on REFLECTIONS bank account ending in 2471 at Wells Fargo Bank, and signed by K. CHATMAN, was deposited at SunTrust Bank. |

53.     It is further alleged that the specified unlawful activity was health care fraud and conspiracy to commit health care fraud, in violation of Title 18, United States Code, Sections 1347 and 1349.

All in violation of Title 18, United States Code, Sections 1957 and 2.

### Count 16
### (Conspiracy to Commit Sex Trafficking – 18 U.S.C. § 1594(c))

54.     From at least as early as September 2013, through in or around May 2016, the exact dates being unknown to the Grand Jury, in Palm Beach and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

### KENNETH CHATMAN, a/k/a "Kenny,"

and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, and maintain by any means, persons, knowing and in reckless disregard of the fact that force, threats of force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause such persons to engage in commercial sex acts, in violation of Title 18, United States Code, Section 1591(a); all in violation of Title 18, United States Code, Section 1594(c).

## Count 17
### (Maintaining a Drug-Involved Premises – 21 U.S.C. § 856(a)(2))

55.     From on or about April 21, 2015, through on or about July 12, 2015, in Palm Beach County, in the Southern District of Florida, the defendants,

**KENNETH CHATMAN, a/k/a "Kenny,"
and
FRANSESIA DAVIS, a/k/a "Francine,"
a/k/a "Francesa,"**

did unlawfully and knowingly manage and control 1130 48th Street, West Palm Beach, Florida, as a lessee, agent, employee, and occupant, and did knowingly and intentionally lease, profit from, and make available for use said place for the purpose of unlawfully distributing and using a controlled substance; in violation of Title 21, United States Code, Section 856(a) and Title 18, United States Code, Section 2.

### CRIMINAL FORFEITURE

1.     Upon conviction of the violation alleged in Count 1, the defendants, **KENNETH CHATMAN, a/k/a "Kenny," JOAQUIN MENDEZ, DONALD WILLEMS, FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," MICHAEL BONDS, STEFAN GATT, and LAURA CHATMAN,** shall forfeit to the United States all property, real and personal, which constitutes or is derived from proceeds traceable to a violation of the afore-stated offenses, including, but not limited to, the following:

(a) The sum of $5,449,789.52 in United States currency representing a money judgment for the amount of proceeds received from the offense.

Pursuant to Title 28, United States Code, Section 2461, Title 18, United States Code, Section 981(a)(1)(C), and Title 21, United States Code, Section 853.

24

2.      If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants,

      (a)      cannot be located upon the exercise of due diligence;

      (b)      has been transferred or sold to, or deposited with a third person;

      (c)      has been placed beyond the jurisdiction of the Court;

      (d)      has been substantially diminished in value; or

      (e)      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

All pursuant to Title 28, United States Code, Section 2461, Title 18, United States Code, Section 981(a)(1)(C), and Title 21, United States Code, Section 853.

3.      Upon conviction of any of the violations alleged in Counts 2-3, the defendants, **KENNETH CHATMAN, a/k/a "Kenny," and LAURA CHATMAN,** shall forfeit to the United States property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, including, but not limited to, the following:

      a.      The sum of $5,449,789.52 in United States currency representing a money judgment for the amount of proceeds received from the offense.

Pursuant to Title 18, United States Code, Section 982(a)(7).

4.      If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants,

      (a)      cannot be located upon the exercise of due diligence;

25

(b)     has been transferred or sold to, or deposited with a third person;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 982, and Title 21, United States Code, Section 853.

5.     Upon conviction of any of the violations alleged in Counts 4-15 of this Indictment, the defendants, **KENNETH CHATMAN, a/k/a "Kenny," JOAQUIN MENDEZ, DONALD WILLEMS, FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa," MICHAEL BONDS, STEFAN GATT, and LAURA CHATMAN,** shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

Pursuant to Title 18, United States Code, Section 982(a)(1).

6.     If any of the forfeitable property described in the forfeiture section of this indictment, as a result of any act or omission of the defendants,

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third person;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

26

(e)     has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 982 and Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

A. MARIE VILLAFAÑA
ASSISTANT U.S ATTORNEY

27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. | 17-80013-CR-Middlebrooks/Brannon |
|---|---|---|

vs.

**CERTIFICATE OF TRIAL ATTORNEY\***

KENNETH CHATMAN, et al.

                         Defendants.
_____/          **Superseding Case Information:**

**Court Division**: (Select One)              New Defendant(s)          Yes _____    No _____
                                              Number of New Defendants
                                              Total number of counts    _____
  Miami _____   Key West _____
  FTL    X     WPB _____    FTP

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number
      of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this
      Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial
      Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:    (Yes or No)      No

      List language and/or dialect      _____

4.    This case will take      20-30    days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
      (Check only one)                              (Check only one)

| I   | 0  to  5 days   | _____ | Petty    | _____ |
|-----|-----------------|-------|----------|-------|
| II  | 6  to 10 days   | _____ | Minor    |       |
| III | 11 to 20 days   |       | Misdem.  |       |
| IV  | 21 to 60 days   |   X   | Felony   |   X   |
| V   | 61 days and over| _____ |          |       |

6.    Has this case been previously filed in this District Court?    (Yes or No)      No
If yes:
Judge: _____          Case No. _____
(Attach copy of dispositive order)
Has a complaint been filed in this matter?       (Yes or No)      Yes
If yes:
Magistrate Case No.                  16-8462-WM
Related Miscellaneous numbers:       _____
Defendant(s) in federal custody as of    K. Chatman 12/21/2016
Defendant(s) in state custody as of      _____
Rule 20 from the     _____        District of     _____

Is this a potential death penalty case? (Yes or No)      No

7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office
      prior to October 14, 2003?    _____    Yes    X    No

8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office
      prior to September 1, 2007?    _____    Yes    X    No

A. MARIE VILLAFAÑA
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0018255

\*Penalty Sheet(s) attached                                                        REV 4/8/08

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  KENNETH CHATMAN, a/k/a "Kenny"

Case No.:  17-80013-CR-Middlebrooks/Brannon

Count 1:

18 U.S.C. § 1349

Conspiracy to commit health care fraud

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Counts 2-3:

18 U.S.C. § 1035

False statement relating to health care matters

*Max. Penalty: 5 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count 4:

18 U.S.C. § 1956(h)

Money Laundering conspiracy

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

Counts 5-11:

18 U.S.C. § 1956(a)(1)(A)(i)

Money Laundering

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   KENNETH CHATMAN, a/k/a "Kenny"

Case No.:   17-80013-CR-Middlebrooks/Brannon

Counts 12-15:

18 U.S.C. § 1957

Money Laundering in excess of $10,000

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release; $250,000 or twice the amount of criminally derived property.

Count 16:

18 U.S.C. § 1594(c)

Sex trafficking conspiracy

*Max. Penalty: Life Imprisonment; 5 years' to life Supervised Release; $250,000 Fine

Count 17:

21 U.S.C. § 856(a)(2)

Maintaining a drug-involved premises

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 Fine

Count:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:   JOAQUIN MENDEZ

Case No.:  17-80013-CR-Middlebrooks/Brannon

Count 1:

18 U.S.C. § 1349

Conspiracy to commit health care fraud

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count 4:

18 U.S.C. § 1956(h)

Money Laundering Conspiracy

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

Counts 5-6:

18 U.S.C. § 1956(a)(1)

Money Laundering

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

Count:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   DONALD WILLEMS

Case No.:   17-80013-CR-Middlebrooks/Brannon

Count 1:

18 U.S.C. § 1349

Conspiracy to commit health care fraud

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count 4:

18 U.S.C. § 1956(h)

Money Laundering Conspiracy

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

Count 7:

18 U.S.C. § 1956(a)(1)

Money Laundering

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

Count:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   FRANSESIA DAVIS, a/k/a "Francine," a/k/a "Francesa,"

Case No.:   17-80013-CR-Middlebrooks/Brannon

Count 1:

18 U.S.C. § 1349

Conspiracy to commit health care fraud

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count 4:

18 U.S.C. § 1956(h)

Money Laundering Conspiracy

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

Counts 9 &11:

18 U.S.C. § 1956(a)(1)

Money Laundering

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

Count 17:

21 U.S.C. § 856(a)(2)

Maintaining a drug-involved premises

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 Fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:  MICHAEL BONDS

Case No.:  17-80013-CR-Middlebrooks/Brannon

Count 1:

18 U.S.C. § 1349

Conspiracy to commit health care fraud

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count 4:

18 U.S.C. § 1956(h)

Money Laundering Conspiracy

Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the
amount laundered Fine

Counts 8 & 10:

18 U.S.C. § 1956(a)(1)

Money Laundering

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $ 500,000 or twice
the amount laundered Fine

Count:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines,
restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET**

Defendant's Name:   STEFAN GATT

Case No.:   17-80013-CR-Middlebrooks/Brannon

Count 1:

18 U.S.C. § 1349

Conspiracy to commit health care fraud

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count:


Max. Penalty:

Count:


*Max. Penalty:

Count:


*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   LAURA CHATMAN

Case No.:   17-80013-CR-Middlebrooks/Brannon

Count 1:

18 U.S.C. § 1349

Conspiracy to commit health care fraud

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Counts 2-3:

18 U.S.C. § 1035

False statements relating to health care matters

*Max. Penalty: 5 years' Imprisonment; 3 years' Supervised Release; $250,000 Fine

Count 4:

18 U.S.C. § 1956(h)

Money Laundering conspiracy

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

Counts 5-11:

18 U.S.C. § 1956(a)(1)

Money Laundering

*Max. Penalty: 20 years' Imprisonment; 3 years' Supervised Release; $500,000 or twice the amount laundered Fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  LAURA CHATMAN

Case No.:  17-80013-CR-Middlebrooks/Brannon

Counts 13-15:

18 U.S.C. § 1957

Money Laundering in excess of $10,000

*Max. Penalty: 10 years' Imprisonment; 3 years' Supervised Release;$250,000 or twice the amount of criminally derived property

Count:

*Max. Penalty:

Count:

*Max. Penalty:

Count:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96